Good morning, Your Honors, may it please the Court, I am Michael Clark, appearing on behalf of Appellant Ms. Combs. I would first ask to reserve perhaps three minutes in rebuttal. My initial comments are very brief. I would first indicate I believe our position was spelled out quite thoroughly in our brief to the Court. The issue here, at least from our perspective, is fairly straightforward. I think it involves an analysis of the Cater case, which we believe was not analyzed correctly or applied by the lower court. In terms of the legal issue, this case involves the accrual versus, well, let me back up. It essentially involves when Ms. Combs' claim arose. The Cater court drew distinctions between- Counsel, as you're discussing this, I'd also appreciate your commenting on when you think the dispute arose, because the statute refers both to the accrual of a claim and the arising of a dispute. Thank you, Your Honor. Quite frankly, the dispute arose when our client received her right to sue letter. I think there can be an argument made that a dispute perhaps arose, although we don't agree with that when she filed the actual complaint with the FEHA. But it's certainly the dispute arose when the right to sue letter was received by our client. What do we do with the fact that that's an ex-party, right? It's not like Netflix hasn't joined, if that's the dispute, Netflix arguably hasn't joined it yet. Correct. And I would clarify further, in any event, a dispute in cases like this arises once the party against whom the complaint is made responds. For example- Counsel, here, the very problem is that the defendant didn't respond. So if someone complains vociferously about their situation, and they get no response, isn't that a form of response where silence doesn't equal consent, but maybe is willful disagreement or ignoring the complaint? We would argue, and I think we did touch upon that in our brief, that that silence certainly would not give our client notice that Netflix was disputing her claims. I think by its very nature, the court should hold defendants' feet to the fire, so to speak. Speaking and making one's position known would be clear indication or evidence that a dispute- How about being fired? Is that an expression of disagreement with what the plaintiff was saying? Our position is it is not, or at least that was not made clear. Our client did not file any complaints formally, though we do recognize she complained to supervisors or various other individuals in the corporation. Netflix did not give her any indication that they denied her allegations. In terminating her, they were simply, at best, making an employment decision. I don't think there's- Her claim was expressly retaliatory for the things that she had said, so why isn't that a dispute, or at least the firing is when the claim accrues? Well, my first response would be Netflix never advised our client of that. Netflix never advised our client that they disagreed with her allegations. Their disagreement would be a clear signal to our client that they were disputing it. Firing her could have been an effort to just simply bury the truth or cover it up. Can I ask just the rule you're asking us to adopt? Are you arguing that a dispute doesn't arise unless there's an external legal complaint filed with a state agency or a court? Is that the position you're advocating for? Not strictly, Your Honor. Okay, so what is the position then? Well, the position is a dispute arises when, first of all, both parties are aware of it. Secondly, the party against whom, as in this case Netflix, complaints are made responds either affirmatively or negatively. So here, the complaint alleges that your client made a number of complaints to management about this conduct. Yes. If Netflix had sent a response saying, we reject your accusations, would you have said that that was a dispute then that arose at that point? I think it's arguable that under what I had just defined as a dispute, some form of a dispute would arise. Now, I do think it's a different context in terms of legal action or litigation or pursuing claims under various statutes. But to answer, Your Honor's specific question, under my definition, it would seem that would be some form of dispute. Yes.  So I guess, I mean, at that point, when we have allegations that your client made many complaints and that Netflix then, when Netflix was aware of the complaints and then didn't do anything about it, why wouldn't we say at that point that there was at least constructively a dispute because she wanted them to do something and they weren't? I think it would fall sort of neatly with other types of litigation, employment related litigation. There are situations where employees complain, adverse actions are taken, the court's well aware of the high number of employment related litigation. We don't think it's sufficient as a matter of law for a company to simply ignore complaints and then later complain or argue, well, the dispute arose, so-and-so is out of time. That might just invite employers, particularly. Well, you're not out of time. I mean, this is a question, you know, no one's decided that yet, that the district court didn't decide that. I know an argument's been made in the alternative. But all that's really the main issue is just where is this going to take place in court or in arbitration? Correct. And at the end of the day, we are asking the court to make it possible for our client to bring her sexual harassment claims to court while keeping in mind the intent behind the ending enforced arbitration act. We think this court's decision today is directly implicated with Congress's intent. Well, what I mean, I take a look at when we're talking about the dispute, the dispute occurs up in 4014, they talk about it means a dispute relating to conduct that is alleged to constitute sexual harassment. If the what I'm trying to understand is the difference between a dispute and a claim, you'd started with claim. But it is your claim and there's a question of accrual, but it is your claim under California law that that failure to respond. Is itself the actionable harassment, I mean, at least under one of the statutes, right, for California law, it says that the employer either has to knows or should have known and fails to take immediate or appropriate corrective action. So that is the claim. Can that also be the dispute, the silence in response to the employee's complaint? That is a very interesting question, I do. I'm just trying to make sense of the statute. Right, right. And it could be that that this is an area of the statute that is maybe somewhat contradictory or or not reconcilable. Our reading is, I think, more on the official side, the filing of claims with governmental entities. Would an internal process, a formal internal process do it? I would indicate perhaps. But again, I would also add, depending on the response, if let's say my client goes internally and says all of the complaints broadly sexual harassment and internally. They say we agree and there's no dispute. But then there would also be I mean, I understand the question of arbitration primarily to be a rising and employer discrimination liability cases, not not co-employees. So that's where the arbitration will be. And in all of those cases, or at least in most of these claims, that wouldn't be a claim either. You would have satisfied it. So I'm trying to prevent these two from from collapsing and demeaning the same thing in the mind run of cases under which arbitration agreements would cover sexual harassment claims. I would I would encourage the court to adopt a view akin to silence by the employer, as in this case, it cannot inform us of the nature of the dispute because the employer, by their silence, hasn't contributed to. But the employer was silent after you filed your administrative claim and got your your right to sue letter, too. So it doesn't seem like that can be essential to it either in terms of the. What was the nature of the complaints made internally? I mean, they seem to be kind of certainly fact based and don't do this. Was there a statement made that this is a violation of my state employment rights? Drawing from my memories, I believe there there were allegations in the complaint where our client indicated to various supervisors over the course of her employment. I could not identify specifically the details of those complaints. I mean, if you're, you know, even assuming your kind of legal position is is correct, I don't see how the case could just automatically remain in the district court without further inquiry, because you've alleged, obviously, that your client made complaints that were met with silence. Correct. But but I would think the other side, if that's if that is insufficient, I think the other side would have at least have the opportunity to say, well, no, we need discovery on that. To be able to determine, you know, maybe they disagree with you on that and would come forward and say, no, we did actually reject your client's accusations. So, I mean, I don't even on that's why I thought your argument was really more about the external legal complaint being the key thing here, because we know that that was filed after March 2023 or March 2022. And that would that would get you all the way home. But if the issue turns on the nuances of the internal complaints, it would seem that there would need to be discovery. We don't we don't believe they turn on the those nuances. But I also understand there may be a lack of information. Quite frankly, we've not heard that that's not come up between the parties or in any briefing below. But the impotence, the impetus to many kinds of employment related claims is the failure of supervisors or individuals with authority to respond, to act in time or to act in any way. And that's kind of where our argument comes with respect to the internal complaint structure. But but that's just again, that that seems to be describing a claim. And if we understand what Congress is trying to do, maybe it's being redundant. But if we understand that what Congress is trying to do is to enhance the protections and keep the courthouse doors open to a larger class of claims, just it seems like it's it's not the most natural reading to treat those as the same thing again, where if that's the dispute, that is going to be most of the claims to the employers in action. And I would just indicate that with respect to most or all arbitration clauses, these are disputes that arise out of the employment. Most of them force force these litigants into arbitration because of those types of claims to then look back, so to speak, and then examine what an employee did or did not do in terms of trying to seek redress within the HR department, for example, would seem to me to frustrate the act itself. OK, do you want to save some time for rebuttal? Yes, please. OK, thank you. Thank you. Good morning. It may please the court. Ashley Pickett appearing on behalf of appellee Netflix, Inc. The district court correctly compelled arbitration in this case, and its ruling should be affirmed for two independent reasons. First, appellant's complaint alleges real world conflict and thus a dispute between the parties. Separate and independently, appellant alleges a sexual harassment claim that is time barred, is therefore not plausible, and thus cannot be used to invoke the EFAA. Well, on the first question about what a dispute is, I understand real world conflict. That may be kind of a good general semantic question, but we're trying to figure out what Congress meant by these words. And there are these other terms in the statute that, first of all, the fact that dispute and claim are juxtaposed with one another. Maybe they mean the same thing, but maybe they don't. And then elsewhere, when they talk about – when Congress actually describes what a sexual harassment dispute is, it talks about allegations or is alleged to violate state law in this case. So in trying to figure out what the statute means rather than what the word dispute means, I mean, can you help me with that? Let's take the first one. Doesn't every dispute under this definition – almost every dispute line up with, overlap with the claim when an employer fails to take action? If the employer takes corrective action, there's no claim. If the employer is silent, there is a claim. Respectfully, no, Your Honor. Okay. Congress was very intentional. It drew a clear temporal line and used two distinct concepts of when a conflict can come into existence. I'm with you so far. When a dispute arose and when a claim accrues. A dispute arises when there is real-world conflict. A claim accrues when there's legal readiness. Now, the parties are in agreement that a claim accrues when all elements of that claim have occurred and the plaintiff is entitled to bring a claim to seek legal redress. The question as to when a dispute arises has been held by various circus courts. Courts have consistently held that while filing or, in this case, evidently a right to sue notice being issued may be evidence of dispute – of a dispute. It's not the definition of one which appellant is really asking this court to hold. Legislature – the legislature knew what it was doing. Congress knew what it was doing. If it intended to say that a dispute arises upon filing or upon receipt of a right to sue notice, it would have said that. It didn't. We have to give independent meaning to the separate and distinct legal terms that the court put forward. So, in your view, does this turn on her allegations that she made internal complaints within the company? Yes, Your Honor, and the Cornelius decision by the Third Circuit is directly on point in that regard. There, the Third Circuit held that a dispute arises when the parties become adverse in the real world. So, when there is a grievance and that grievance is met with some kind of resistance. Importantly – Where is the resistance? In Cornelius, the allegation was that the employer discriminatorily dismissed the complaints, and here the allegation is silence. They are actually the same. In Cornelius, it was alleged that the employer constructively resisted the complaints by, quote, doing nothing. Here, appellant claims – I was just going to say there's also the formulation in the Castillo case, which I think is slightly different but maybe consistent with the Third Circuit. There, it was not a circuit case, but the court has said that a dispute arises when the conduct which constitutes the alleged sexual harassment occurs. Whereas the claim accrues when the plaintiff has a complete and present cause of action. Is that too broad? I don't – Because if the employer says, oh, my goodness, you're right, we're going to take action against the person who's bugging you, then there had been – maybe there was a dispute, but it was resolved. Or maybe there was no dispute. I guess I'd like – Certainly. So what the Third Circuit's holding in Cornelius shows us is that when a grievance is met with resistance, and that can be met with either express resistance, a formal letter saying we do not agree with you, or constructive resistance. There in that case, the appellant claimed that the employer did nothing. That is the same as what appellant claims here. She claims that in 2018 she was sexually harassed, that in 2018 she made a complaint to her employer, and that her employer ratified that sexual harassment, importantly, by choosing to do nothing, by choosing not to take constructive action in response to her complaints. Now, not only is this case akin and very similar and right on point with Cornelius, which is very well reasoned, but we have something more here that Cornelius didn't even have. We have a claim in appellant's complaint, in her pleading, that Netflix further terminated her in retaliation for making sexual harassment complaints. So while I believe that the case law supports that the record is clear that internal complaints as early as 2018 are when the dispute arose, the precise date of that internal complaint rising to the level of a dispute is really an academic exercise because here we also have a termination based on sexual harassment complaints as alleged by a claimant. And how is that not also the same time the claim accrues? It may be in some instances. Again, I guess I'm worried that it is going to be in almost all instances, and then we've got superfluity. I think we're confusing claim accrual with a dispute arising. It could be, for instance, when the claim accrues for wrongful termination, but it is not when the dispute between the parties first arose. The dispute between the parties first arose when the parties had a conflict between them. What purpose do you think Congress was trying to serve by, I think Judge Graber's example suggests that sometimes the dispute may come well before the accrual of the claim on that definition. So claim accrual is a very common term. That's no surprise. We know how that works. When Congress is trying to figure out exactly how it's going to phase in legislation, that we're used to. What work is dispute doing that advances the policy of Congress in this act? I think it is showing Congress's recognition that while it is a prospective statute, it explicitly is not a retroactive statute, that there are various ways that conflict can arise. And so dispute can arise in many instances after a claim accrues. The memo court in the Sixth Circuit, for instance, noted that sometimes in sexual harassment claims, hostile work environment claim can only accrue after or, excuse me, a dispute can arise after a complaint accrues due to severity and pervasiveness, for instance. But they are two distinct notions. So it's, to your point, I think furthering Congress's intent by not limiting it just to claim accrual, it's giving more opportunities. Dispute arising is a broader term, but it's not a narrow term. It's not required to be when a filing is made at a party's subjective determination. Well, how do we know, I mean, so that there's, I mean, if it is such a broad term, how do we know it when we see it? The courts of appeals are, I mean, as you point out, they generally tend to be taking a reading that seems at first glance to be more aligned with your position. But they're kind of all over the map, right, in terms of there's one that says, well, it actually does look more like formal letters and formal process afterwards. And it just doesn't seem like usually when a legislature enacts a law that wants to create kind of bright lines about when things are going to phase into, it's going to get into not just the already fact-intensive but well-established nature of claim accrual, but add this new intersubjective question, real-world question of what is or isn't a dispute. Even if we adopted your position, it's not clear which of the courts of appeals should we line this up with, so both employers and employees have the guidance that we want to take Congress to have provided. The circuit decisions have applied the ordinary meaning to dispute. Respectfully, I think all of the circuit decisions are aligned with Appellee Netflix's position here. Cornelius, we've already hit on. The Memor Court in the Sixth Circuit expressly adopted Cornelius's reasoning, and simply there it held that the district court made the error that it didn't distinguish between claim accrual and a dispute arising, and therefore it remanded simply for that factual question. So that does not go against Netflix's position. Again, it supports the Cornelius's reasoning, which is right on point. FAMUI Day, which is the Eighth Circuit, similarly was distinguishable here because there was alignment between the parties until after the FAA was enacted, the court found. That case is clearly distinguishable, again, from what is pled by claimant. But I guess I took the Eighth Circuit case to be focused on more the question of whether there is a legal demand. There were letters going back and forth, and those weren't enough. There's nothing close to that here. Respectfully, I disagree. And specifically because in FAMUI Day, what happened was the plaintiff was subjected to a sexual assault while at work. She reported that assault to her employer, and her employer placed her on the leave, she requested, and separately was aligned with her, and there was no conflict between them because it terminated the assailant. At that point in time, the Eighth Circuit found, again, there was no conflict between the parties. There was no constructive resistance to the employee's complaint, quite the opposite. They were very much aligned. Now, later, she had attorneys send a litigation hold and a personnel file request to her employer. Respectfully, I disagree with the Eighth Circuit that that does not show adversity. But nonetheless, the Eighth Circuit found that those specific letters were not enough to show the employer and put the employer on notice and show adversity between the parties because a lawsuit was not necessarily going to happen. It was not saying that they have these claims that they are going to bring. It was saying, I want my personnel file, please, and here's a litigation hold. Again, I don't think – I don't agree with that, but nonetheless, here, that is very distinct from what we have. Can I ask you, I guess, about then the second part of my original question to you? There's ordinary meaning. There's also kind of context and statutory definitions. So 4.014, Congress defines a sexual harassment dispute as a dispute relating to conduct that is alleged to constitute sexual harassment under applicable law. Where here – where in this dispute was it alleged that the conduct constituted sexual harassment under applicable law? Under applicable law. In 2018, according to the complaint, appellant alleges that she specifically complained. According to the complaint? Yes. Okay. But contemporaneously. I'm sorry. Perhaps I'm not understanding your question. Well, so it's eventually alleged. I think the question is whether when an employee complains, I have been sexually harassed, that is or is not the employee's allegation of sexual harassment. Or does it only mean an allegation in some later court document? Here, we have to take plaintiff's allegations as true. Her complaint alleges that when she complained of sexual harassment, appellee Netflix specifically opposed or ignored that complaint and thereby ratified that sexual harassment, which made it a claim at that point in time. But she also – I mean she also does specifically allege that it was unlawful. So I guess maybe the suggestion is did she need to allege it was unlawful under some particular law or was it enough to just say it was unlawful? I believe it was enough to show that there was adversity between the parties. raising a complaint. She terms it as a complaint to her employer. And the employer, unlike in Family Day, saying I agree with you, let me take these actions that are consistent with your position, instead doing the inverse here and according to appellant, not being consistent with her position, not taking the corrective action that she claims was alleged. But again, you're falling back to your lead argument dispute. My question is how do we make sense of how Congress used the word dispute in this act, which says is alleged to constitute sexual harassment? I think my colleagues have kind of drilled down a little bit on this question. You can point to the allegations in the complaint, but of course if what Congress had in mind is that in order for it to be a dispute, it has to have been alleged to do that, then pointing to the complaint suggests that the complaint is the dispute. I guess the question is whether if, as Congress understood it, the dispute is at some point an allegation of violation of the law, if that's the rule, where would we find that here? We've heard a couple of different possibilities. I know you're almost out of time, but I wanted to raise another possibility about what allegation means in that context. When an employee complains to the employer that they've been subjected to sexual harassment and it's wrong or it's illegal or it shouldn't happen, and it turns out later that their argument is unfounded for one reason or another, doesn't alleged simply mean that the claim or dispute or assertion of harassment doesn't have to be valid to trigger the non-arbitration rule? In other words, a baseless claim when made is still a claim because it's an allegation or a baseless dispute or baseless assertion. To me, that is the role that alleged plays, but I would like your take on that as well. Perhaps, Your Honor. That is not what's at issue here, though, because we are required, again, to take the allegations of the complaint as true for purposes of the appeal and purposes of this record. Now, importantly, as to Congress's intent, if it was required that a dispute could not arise until a complaint was filed or a right to sue notice was issued, that would mean that EFAA applicability would depend entirely on when a plaintiff arbitrarily chose to file paperwork rather than when the parties actually became adverse. It would really render no meaning to the word dispute. It would condense and really collapse the statute into one term, which is distinct from the two separate bases that the Congress intended to include here. Now, I think that that is important because it shows why the ramifications of such a ruling, which, similar to here, where the statute of limitations ran on the sexual harassment claims in 2021 prior to the EFAA, such that this is not even a plausible claim, that, nonetheless, the concept that a plaintiff can allege untimely, time-barred claims that are not legally viable and thereby invoke the EFAA clearly was not within Congress's intent in making it prospective and not real. Well, I guess the – I mean, I guess it depends. Congress – it might be that Congress, as at least some sponsors had suggested, wanted to open the doors to the courthouse for people who were locked out by arbitration agreements. That only describes people who have claims but not yet disputes. But by making it prospective as opposed to retroactive, Congress drew a clear line in choosing to require sexual harassment claims in the future be heard in court and not choosing to reopen past disputes. It would have made it retroactive and intended otherwise. We'd like to go over, but that's because there have been questions. So, I want to see if Judge Graber or Judge Johnson have additional ones. No, thank you. Okay. Thank you very much. Thank you very much for your presentation. Thank you, Your Honors. I'll just – I'll be brief. One of the – one of the concerns I have in listening to my colleague as it relates to the issues before the court involves this very topic of the accrual versus arising, if you will, of claims versus disputes. The Cater Court indicated, quote, a dispute arises when one party asserts a right, claim, or demand and the other side expresses disagreement or takes an adversarial posture. The purpose of this rebuttal is just to express concerns about what is an adversarial posture. We have here a case where Netflix didn't actively respond to our client. They were silent. So, why isn't the allegations – I mean set aside the allegations. Why isn't the complaint to say I think you are – let's assume that the allegation is I think you are unlawfully harassing me. Why isn't that enough to meet at least Congress's definition if not the dictionary's? Quite frankly, it's because that's an expression of one's opinions. There was some talk about allegations. The key is the response. Again, in Your Honor's example, Your Honor did not offer a response. If I may, I could say, well, if the person who's making that complaint then receives a response, no, I didn't do that, there's a dispute. But here we have a termination. So, I mean it's not a situation only where somebody made complaints that were then unheeded. There was also the allegation that your client was actually terminated for making those complaints. So, with that, why doesn't it fit within the rule that you read us from Cater? Well, at that point, our client hadn't filed any action. We all understand there were some verbal complaints giving her facts. They're due. She made complaints to supervisors, presumably verbal, but a more formal complaint related to the adverse action or the action that she took to be in violation of statute or law. That would certainly start a process, but the termination alone would not start that. There's no indication that our client – I'm not trying to sound absurd, but our client or any litigant could have been like, well, thank God, I can go get unemployment now that job's over. So, I don't think that would be enough. If absent some more facts, complaining to a supervisor, then getting fired, I don't think legally triggers any of the rules or procedures under the EFAA or anything that would be required under Cater. The rest of the – well, with respect to the adversarial posture, my concern is to the extent there's inaction by Netflix here, meaning they said nothing. I would encourage the court not to find that to be any sort of adversarial action. It's silence. It's moot, and the danger as I see it would be any savvy employer, whether they were acting on advice or just happened to keep up with this court's opinions, could then say, hey, we have complaints or when we have complaints of whatever nature, say nothing. So are you asking us then to just disagree with the Third Circuit in the Cornelius case? I think this court should follow the Cater case, which came out of this court's – this district or this court's circuit or the district court here. I think it's – The state court case, but – Right, right. It's – that case was decided out of California. I think the Cater case has more value because of that. Okay. We've let you go a little bit over your time, and I want to thank you for your presentation. Thank both counsel for the helpful briefing argument. This case is submitted. That concludes our calendar for this morning. We'll stand in recess until tomorrow morning. Thank you.
judges: GRABER, BRESS, JOHNSTONE